CLERK'S OFFICE
A TRUE COPY
Aug 26, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Information related to the cellular telephone assigned call number (956) 692-8290 (the "SUBJECT PHONE"), as further described in Attachment A

Case No. 26-MJ-136

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ______ District of ______ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 09/09/2026 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Hon. William E. Duffin.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for 30 days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ______.

Date and time issued: 08/26/2026 at 1:08 p.m.

William E. Duffin
*Judge's signature*

City and state: Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| --- | --- | --- |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________
*Executing officer's signature*

____________________
*Printed name and title*

# <u>ATTACHMENT A</u>
## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(956) 692-8290** (“the **SUBJECT PHONE**”), that are stored at premises controlled by AT&T (“the Provider”), headquartered at 11760 U.S. Highway 1, Suite 300 North Palm Beach FL, 33408.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **SUBJECT PHONE** listed in Attachment A for the time period of October 22, 2025 through May 1, 2026:

a. The following subscriber and extended subscriber information about the customers or subscribers of the **SUBJECT PHONE**:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **SUBJECT PHONE**, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

ii. information regarding the cell towers and sectors through which the communications were sent and received; and

iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

c. All historical text content available pursuant to this warrant and previous preservation orders served on or about 06/12/2026.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. § 841(a)(1), 843(b), and 846 (Possession with Intent to distribute a controlled substance, Use of a Communication Facility in Furtherance of Drug Trafficking, and Conspiracy to Possess with the intent to distribute controlled substances)

and 18 U.S.C. § 924(c) (Use or carry of firearm and in relation to Drug Trafficking) involving JOSE ANGEL PEREZ HOYOS during the period October 22, 2025 through May 1, 2026.

CLERK'S OFFICE
A TRUE COPY
Aug 26, 2026
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Information related to the cellular telephone assigned call number (956) 692-8290 (the "SUBJECT PHONE"), as further described in Attachment A

Case No. 26-MJ-136

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ______ District of ______, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B,

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), & 846 and 18 U.S.C. § 924(c) | Possession with the intent to distribute a controlled substance; use of a communication facility in furtherance of drug trafficking; conspiracy to distribute a controlled substance; and possession of a firearm in furtherance of drug trafficking |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of 30 days *(give exact ending date if more than 30 days: ______ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

______________________
*Applicant's signature*

Matthew Haas, FBI TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 08/26/2026

______________________
*Judge's signature*

City and state: Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Matthew Haas, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(956) 692-8290**, (hereinafter referred to as the "**SUBJECT PHONE**"), that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300 North Palm Beach, FL 33408. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I am authorized by law or by a government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

3. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Law Enforcement Officer with the Ozaukee County Sheriff's Office (WI) since 2011 and

currently hold the rank of Detective. I am currently assigned to the FBI Milwaukee Homeland Security Task Force ("HSTF") as a federal taskforce officer and have been a federal taskforce officer since February 11, 2026. My responsibilities include the investigation of possible violations of state and federal law, including the investigation of drug trafficking, weapons trafficking, money laundering, homicides, and other general crimes. During my career, my investigations have included the use of various surveillance techniques, the review of a variety of electronic devices and the content/data that is able to be forensically extracted from those devices, and the execution of numerous search, seizure, and arrest warrants.

4. As a detective with the Ozaukee County Sheriff's Office, I have participated in narcotics investigations and debriefed and/or participated in the debriefings of defendants, informants, and witnesses who had personal knowledge of narcotics trafficking and criminal organizations. I have participated in many aspects of narcotics investigations, including conducting physical and electronic surveillance, analyzing telephone toll information obtained through subpoenas, analyzing financial information, analyzing a variety of electronic devices and the content/data that is able to be forensically extracted from those devices, overseeing the activities of and debriefing informants, and executing arrest and search warrants. I have coordinated controlled purchases of illegal drugs utilizing cooperating witnesses. Based on my training and experience, I am aware that drug traffickers commonly use a variety of electronic devices, including cellular telephones, laptops, tablets, and other audio/video recording devices to communicate and further their illegal activities and that those devices have the ability to connect to the cellular network.

5. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable

cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why a variety of actors typically conduct various aspects of their criminal activities.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1), 843(b), and 846 (Possession with Intent to distribute a controlled substance, Use of a Communication Facility in Furtherance of Drug Trafficking, and Conspiracy to Possess with the intent to distribute controlled substances) and 18 U.S.C. § 924(c) (Use or carry of firearm and in relation to Drug Trafficking), (herein after referenced as "TARGET OFFENSES") have been committed by JOSE ANGEL PEREZ HOYOS (herein after referred to as "PEREZ HOYOS") There is also probable cause to search the information described in Attachment A for evidence of TARGET OFFENSES as further described in Attachment B.

## PROBABLE CAUSE

8. On April 30, 2026, at approximately 10:45 AM, Wisconsin State Patrol Trooper Rahn observed a white Chevrolet Silverado bearing Illinois Registration 4048674B (hereinafter referred to as "the VEHICLE") navigating through a construction zone. The VEHICLE unsafely deviated from its lane of travel. Trooper Rahn observed the VEHICLE's passenger side tires cross the solid white lane line and almost struck the concrete barrier wall in the construction

zone. Trooper Rahn activated his emergency lights and sirens and conducted a traffic stop based on the above observations. The VEHICLE pulled to the right shoulder off the roadway on I-94 East Bound under the stadium exchange. Trooper Rahn and Trooper Oubouha approached the VEHICLE and observed the VEHICLE had a sole occupant, later identified via Illinois driver's license as JOSE ANGEL PEREZ HOYOS (hereinafter referred to as "PEREZ HOYOS"). PEREZ HOYOS's DOB is XX/XX/1987, his address on his driver's license is 7572 N Cherryvale Blvd, Apt 102, Cherry Valley, IL 61016.

9. During the initial contact, Trooper Oubouha observed PEREZ HOYOS exhibiting signs of extreme nervousness, including visible hand shaking, trembling and rapid and shallow breathing. PEREZ HOYOS told Trooper Oubouha he was on his lunch break from work and was going to a restaurant, though he was unable to provide the name of the restaurant.

10. Inspector Kostos and his K9 Partner, Diego, responded to the scene to assist. Inspector Kostos made contact with PEREZ HOYOS and advised that he would be deploying K9 Diego around the vehicle. Trooper Oubouha asked PEREZ HOYOS to exit the vehicle during the K9 deployment and PEREZ HOYOS complied and exited the vehicle.

11. Narcotics detection dog Diego is trained and certified through the North American Police Work Dog Association. K9 Diego is trained to detect the odor of controlled substances, including cocaine, heroin, methamphetamine.

12. Inspector Kostos began K9 Diego's deployment around the VEHICLE and Inspector Kostos observed "alert behavior" from Diego at the front passenger side quarter panel. Inspector Kostos' report indicates that "Alert Behavior" observed in Diego includes "Passive Indication" which is further described as sitting, laying down, or staring at the source of the odor." Inspector Kostos observed "alert behavior" from K9 Diego at the front passenger side

quarter panel. K9 Diego closed his mouth, snapped his head, increased deep respirations, and stuck his head in between the tire and the fender. This alert behavior was observed multiple times at the same location during the deployment. K9 Diego also displayed alert behavior at the rear driver's side bed area. K9 Diego went under the vehicle with his head and stuck his head in between the rear driver's side tire and fender. Inspector Kostos reported that K9 Diego's alert behavior was consistent with what Inspector Kostos had observed before in other training scenarios, where controlled substances were located.

13. Inspector Kostos informed Trooper Rahn and Oubouha of the probable cause to search the VEHICLE and advised PEREZ HOYOS that the VEHICLE would be searched. PEREZ HOYOS stated he was not going to let the officers into the VEHICLE and PEREZ HOYOS was subsequently handcuffed and detained. Inspector Kostos took the VEHICLE'S keys from PEREZ HOYOS' belt and began the search of the VEHICLE.

14. During the search, Inspector Kostos located approximately $44,200.00 US Currency in a lunch box that was hanging off the driver's seat head rest. The US Currency was packaged in plastic grocery bags. Inspector Kostos also located approximately $1,969.00 in US Currency in the center console and cup holder.

15. Inspector Kostos searched the bed of the VEHICLE and located a duffle bag with a light bulb box in it. After opening the light bulb box, Inspector Kostos observed a vacuum sealed bag that contained a white powdered substance which was pressed into a "brick" shape. Inspector Kostos subsequently tested a sample of the white brick with a Mobil Detect Multi Drug test kit, which showed a positive presumptive field test for the presence of cocaine. Inspector Kostos later weighed the white brick in its original packaging on a digital scale, which revealed a total weight of approximately 520 grams.

16. Trooper Rahn searched the front passenger seat of the VEHICLE and located a blue backpack. Trooper Rahn opened the backpack and observed a black semi-automatic handgun in an inside-the-waistband-style holster. Trooper Rahn rendered the handgun safe and observed a loaded magazine, holding 17 bullets, inserted into the magazine well of the firearm. Trooper Rahn locked the slide to the rear and did not observe a round in the chamber of the firearm. Trooper Rahn observed the handgun to be a Taurus G3 9mm handgun bearing serial number ADB977541. Trooper Rahn requested Wisconsin State Patrol Dispatch to conduct a check on PEREZ HOYOS to determine whether he had a valid concealed weapon permit or if PEREZ HOYOS was a felon. Trooper Rahn was advised that PEREZ HOYOS was not a felon; however, he did not have a permit to carry the firearm in a concealed manner. Also located in the VEHICLE (by law enforcement) was a silver Dell Laptop with Serial Number: F93ZVV3 (Device 1). Affiant spoke with Trooper Rahn who stated the laptop (Device 1) was located on the center counsel and was powered on during their initial contact with PEREZ HOYOS.

17. PEREZ HOYOS was ultimately taken into custody by the Wisconsin State Patrol because of the above mentioned contraband that was located in the VEHICLE. Trooper Oubouha conducted a search, incident to arrest, of PEREZ HOYOS and located two cellular phones (a black iPhone with black lion phone case (Device 2), and a black and silver Samsung touch screen phone (Device 3)) and approximately $902.00 in US Currency on his person.

18. Due to the large amount of US Currency and drugs located in the VEHICLE, Trooper Rahn informed his supervisor, Sgt. Lorenz, and requested assistance with the traffic stop. Sgt. Lorenz informed Trooper Rahn that members of the Milwaukee Homeland Security Task Force would come to assist with the traffic stop.

19. On April 30, 2026, at approximately 12:00 p.m., FBI Special Agent (SA) E. Steimle, FBI SA M. Smith and Task Force Officer (TFO) D. Krenzien arrived at the location of the traffic stop to assist with the search of the VEHICLE. SA Steimle observed a LYTX Drivecam Event Recorder (Device 4) on the windshield of the vehicle. Your Affiant researched the LYTX Drivecam Event Recorder. According to the company's website, the LYTX Drivecam Event Recorder is, "An AI-powered commercial dash cam equipped with advanced sensors to help you assess what's happening on the road and inside the vehicle." The LTYX Drivecam Event Recorder also records the GPS location of the device, and is capable of storing up to 400 hours of video.

20. The LYTX device (Device 4) had the following identifiers:

a. Product: ER-SF300V2

b. Model: DC-7000-001

c. FCC ID: XMR201909EG95NAX

d. IC: 10224A2019EG95NAX

21. The evidence seized from the VEHICLE and PEREZ HOYOS' person was transported by Trooper Rahn to North Central HIDTA, except for the LYTX Drivecam Event Recorder (Device 4), which remained on the windshield of the VEHICLE.

22. On or around May 20, 2026, FBI Milwaukee Division sent the approximately 520 gram white brick substance to Drug Enforcement Administration (DEA) North Central Laboratory in Chicago, Illinois for drug analysis testing. On or around May 21, 2026, the laboratory accepted the request and on or around May 29, 2026, the Chemical Analysis Report was finalized. The Chemical Analysis Report revealed that the substance was Cocaine Hydrochloride, weighed approximately 499.0 g and was approximately 91% ± 6% pure.

23. On or around May 1, 2026, a Firearms Trace Summary was requested on the seized firearm (Trace Number: T20260220198). On or around May 13, 2026, the Firearms Trace Summary was completed and revealed the firearm was purchased in April 2023 by a male with an unknown (if any) connection to PEREZ HOYOS.

24. On July 14, 2026, United States Magistrate Judge Stephen C. Dries authorized a search warrant allowing the forensic download/ review of a silver Dell Laptop (Device 1), black iPhone with lion phone case (Device 2), black and silver Samsung touch screen phone (Device 3), and a LYTX brand Drivecam Event Recorder (Device 4). Special Agent (S.A) Steimle coordinated the download of the laptop and both cell phones. I contacted Always Towing and Recovery (the company that removed the white Chevrolet Silverado from the traffic stop location) and learned they previously released the Vehicle to an authorized individual from the company where PEREZ HOYOS worked. For that reason, to date, case agents have not been able to locate or search Device 4.

25. On August 3, 2026, Special Agent (S.A) Jacobs informed me the digital forensic technicians were able to complete a full extraction of Device 3 and only a partial forensic extraction of Device 2; The technician was still attempting to bypass security measures on Device 1. I reviewed the forensic extraction of Device 3 and noted it appears to have been used solely for work purposes as most of the conversations and photographs on the phone appear to be work related.

26. I reviewed the partial extraction of Device 2 and noted the identifiers below:

MSISDN: **956-692-8290** (**SUBJECT PHONE**)

Last Used MSISDN: (+52) 332-951-6750

Apple ID: ap2113@icloud.com

Apple ID: angelhidrogomez@icloud.com

IMSI: 310280187153327

27. I know through past investigations that "MSISDN" stands for Mobile Station International Subscriber Directory Number, which is also known as the phone number assigned to a specific device.

28. Based on the information provided in the partial extraction of Device 2, PEREZ HOYOS is utilizing an iCloud account. The device was "factory reset" on April 16, 2025 and the last "Cloud Backup" was on April 30, 2026 at 7:27am. I searched the MSISDN number (**956-692-8290** (**SUBJECT PHONE**)) through trusted law enforcement resources which I have used in past investigations and have found them to be accurate and reliable. I discovered the MSISDN number (**956-692-8290** (**SUBJECT PHONE**)) is serviced by AT&T.

29. Within the extracted date for Device 2 (the device associated with the **SUBJECT PHONE** number), I located one conversation between the user of Device 2 (believed to be PEREZ HOYOS) and "Marco" (marco20234814) which took place on February 3, 2026 that appears to be centered around the sale of narcotics. This conversation is in Spanish and was translated using Google Lens. In this conversation, I believe that: PEREZ HOYOS tells Marco "There are also some whole ones" to which Marco asks how much. PEREZ HOYOS replies, "17 They have already gone up a bit, the jerks don't want to lower the price, but they're good for water, guaranteed." Marco responds that is a good price and inquires if "They're cut." PEREZ HOYOS responds with "No cutting when cooking it in water. They don't lie." PEREZ HOYOS

then tells Marco he is only making $500 profit and that he is purchasing the [presumed drugs] for $16,500 and added that, "if there are many, we can negotiate with him, so he'll lower the price." Based on my training and experience, the content of this conversation, and current drug prices, I believe PEREZ HOYOS and Marco are discussing the sale of a kilogram of cocaine.

30. Within the extracted date for Device 2 (the device associated with the **SUBJECT PHONE** number), I located a conversation between Shaquille Jackson (Shaquille_93) and the user of Device 2 (believed to be PEREZ HOYOS) which took place on October 23, 2025, where Jackson appears to be the middle person in a drug deal between PEREZ-HOYOS and an unnamed individual. In this conversation, I believe that: PEREZ HOYOS tells Jackson "They're selling at 17 right now, no less." Based on my training and experience, the content of this conversation, and current drug prices, I believe PEREZ HOYOS and Shaquille Jackson are discussing the sale of a kilogram of cocaine.

31. I reviewed the "Images" section of the download for Device 2 (the device associated with the **SUBJECT PHONE** number), and located a photograph of a black Taurus handgun with Vortex Venom optic, and a Gmconn brand weapon mounted light system; a black inside the waistband holster is also captured in the photograph. This photograph was created on April 16, 2026. As noted above, the firearm recovered from the April 30th traffic stop was a Taurus G3 9mm handgun which was visually consistent with the firearm depicted in this photograph. Because a serial number is not visible in the photograph, I cannot say for certain that the firearms are the same, only that they are consistent.

32. Based on the evidence recovered during the traffic stop and the information located on Device 2, I believe that PEREZ HOYOS used the **SUBJECT PHONE** number to engage in drug trafficking. I believe that the requested data will provide evidence of the

TARGET OFFENSES including location data showing where PEREZ HOYOS acquired or stored controlled substances, call records identifying drug suppliers and/or drug customers, and subscriber data further connecting PEREZ HOYOS to Device 2/the **SUBJECT PHONE** number.

33. I am requesting data for the timeframe of October 22, 2025 (one day before the text message string referenced in paragraph 30) through the day following PEREZ HOYOS's arrest. I believe this amount of data is necessary to establish whether PEREZ HOYOS was the exclusive possessor of the **SUBJECT PHONE** during relevant times and events, to identify locations where PEREZ HOYOS frequently traveled related to drug trafficking, and to identify the nature, length, and scope of PEREZ HOYOS's relationship with various drug customers and suppliers.

34. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is

typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

35. Based on my training and experience, I know that AT&T can collect cell-site data about the **SUBJECT PHONE**. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

36. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **SUBJECT PHONE**'s user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

37. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

38. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or

control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

39. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **SUBJECT PHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

40. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

## <u>ATTACHMENT A</u>
## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(956) 692-8290** ("the **SUBJECT PHONE**"), that are stored at premises controlled by AT&T ("the Provider"), headquartered at 11760 U.S. Highway 1, Suite 300 North Palm Beach FL, 33408.

# ATTACHMENT B

## Particular Things to be Seized

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the **SUBJECT PHONE** listed in Attachment A for the time period of October 22, 2025 through May 1, 2026:

a. The following subscriber and extended subscriber information about the customers or subscribers of the **SUBJECT PHONE**:

   i. Names (including subscriber names, user names, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); device make and model;

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **SUBJECT PHONE**, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers); call detail records for voice, SMS, MMS, and data; email addresses and IP addresses (including source and destination); and

ii. information regarding the cell towers and sectors through which the communications were sent and received; and

iii. per call measurement and timing advance data (PCMD, RTT, True Call, LOCDBOR, or similar)

c. All historical text content available pursuant to this warrant and previous preservation orders served on or about 06/12/2026.

**II. Information to be Seized by the Government**

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. § 841(a)(1), 843(b), and 846 (Possession with Intent to distribute a controlled substance, Use of a Communication Facility in Furtherance of Drug Trafficking, and Conspiracy to Possess with the intent to distribute controlled substances)

and 18 U.S.C. § 924(c) (Use or carry of firearm and in relation to Drug Trafficking) involving JOSE ANGEL PEREZ HOYOS during the period October 22, 2025 through May 1, 2026.